IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS GORDON, | : |
|        Plaintiff, | : |
| v. | :   Civ. No. 12-1057-LPS |
| JAMES SCARBOROUGH, et al., | : |
|        Defendants. | : |

Thomas Gordon, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

March 15, 2013
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Thomas Gordon ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.[1] Plaintiff, an inmate, is housed at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware. He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915 and§ 1915A.

## II. BACKGROUND

Plaintiff alleges violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution as well as violations of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq*. (D.I. 1, ¶¶ 57, 61) Plaintiff received a write-up and was sent to isolation on May 18, 2012. (*Id.* at ¶ 1) Two days later, Plaintiff was placed on a suicide watch. (*Id.* at ¶ 2) The next day, he attended a disciplinary hearing, pled guilty, and was sanctioned. (*Id.* at ¶ 3)

On May 22, 2012, Plaintiff engaged in a heated discussion with mental health workers, became enraged, and used his handcuffs to injure himself. (*Id.* at ¶¶ 4-5) Plaintiff was taken to the infirmary and then to a cell where he was placed on four-point restraints for four hours. (*Id.* at ¶¶ 6-8) Plaintiff was taken off the suicide watch on June 4, 2012, transferred to the Security Housing Unit ("SHU") on June 5, 2012, and placed in an isolation cell. (*Id.* at ¶¶ 9-12) Plaintiff was advised by two correctional officers that Defendant Deputy Warden Scarborough

---

[1]Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. See *West v. Atkins*, 487 U.S. 42, 48 (1988).

1

("Scarborough") had placed Plaintiff on "strip cell status" until further notice. (*Id.* at 13) On June 7, 2012, Scarborough advised Plaintiff that he had placed him on "strip cell status" due to Plaintiff's continuing to "play this mental health game." (*Id.* at ¶ 17) Scarborough told Plaintiff that there was nothing wrong with him and that "from now on" Scarborough would "personally handle any 'outbursts'" by placing Plaintiff on strip cell status or twenty-four hour restraints until Plaintiff "learned his lesson." (*Id.*) Plaintiff remained on "strip cell status for twenty-one days, from June 5, 2012 until June 27, 2012. (*Id.* at ¶ 60)

While on "strip cell status," Plaintiff was allowed to have a mattress from 10:00 PM until 8:00 AM, although the times varied and, on some occasions, he was not provided a mattress until 11:00 PM. (*Id.* at ¶ 19) On June 10, 2012, Plaintiff was awakened at 6:00 AM to return his mattress, per orders of Scarborough. (*Id.* ¶ 20) Plaintiff protested and asked to speak to the shift commander. (*Id.*) He was taken to the interview room and told he would be placed in twenty-four hour mechanical restraints and housed in the observation room by order of Defendant Major Brennan ("Brennan") for "making us wake him up at home about a f—ing mattress." (*Id.* at ¶¶ 21, 48, 49) The room had constant illumination and the floor was covered with hair. (*Id.* at ¶ 43) After twenty-four hours, Plaintiff was returned to his cell where he remained on "strip cell status." (*Id.* at ¶¶ 22-25)

Plaintiff alleges that the cell was cold, and he was deprived of "decent" sleep because of blanket and mattress restrictions. (*Id.* at ¶ 38) In addition, correctional officers would bang on the cell door, causing Plaintiff to miss even more sleep. (*Id.* at ¶ 46) Plaintiff alleges that he was not allowed out for recreation and was only permitted to shower three times per week. (*Id.* at

¶ 45) He was only allowed the use of soap, toothpaste, a toothbrush, and a washcloth during shower time. (*Id.* at ¶ 50) This caused Plaintiff to eat with dirty hands because utensils were removed from his food tray. (*Id.* at ¶ 51) Toilet paper was not allowed in the cell and he received it only upon request, but no soap was provided to Plaintiff following his use of the bathroom. (*Id.* at ¶¶ 53, 54) Finally, Plaintiff complains that, because he was not allowed to have his Qur'an or proper attire while on strip cell status, he was unable to offer prayer "properly" for three weeks straight. (*Id.* at ¶ 55)

Plaintiff wrote letters to several individuals, including Defendants Brennan, Deputy Warden Pierce ("Pierce"), Scarborough, and Warden Phelps ("Phelps"), seeking removal from the "strip cell status" and questioning its legality. (*Id.* at ¶ 26) Plaintiff also sought a remedy through the prison's grievance procedure, but his grievances were returned as non-grievable by Defendants Cpl. Dutton ("Dutton") and Lt. Welcome ("Welcome"). (*Id.* at ¶¶ 28-33, 42, 56) Plaintiff was informed that only Pierce or Phelps could override Scarborough's order, so he again wrote to Scarborough, Pierce, and Phelps, but received no responses. (*Id.* at ¶¶ 34-36) In addition, neither Pierce nor Phelps, tried to intervene. (*Id.* at ¶ 41)

Plaintiff seeks injunctive relief in the form a transfer to the Sussex Correctional Institution ("SCI") in Georgetown, Delaware, declaratory judgment, and compensatory and punitive damages. (*Id.* at ¶¶ 1-12)

### III. LEGAL STANDARDS

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis*

3

actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(l), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(l) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *See id.* The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *See id.* at 210-11. The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. In other words, the complaint must do more than allege the plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## IV. DISCUSSION

### A. Grievances

Plaintiff complains that Welcome and Dutton did not properly address the grievance he filed. The filing of prison grievances is a constitutionally protected activity. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. Nov. 7, 2006) (not published). To the extent that

5

Plaintiff bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutional right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. Aug. 18, 2011 (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim as Plaintiff is free to bring a civil rights claim in District Court. *See Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. July 28, 2009) (citing *Flick*, 932 F.2d at 729).

To the extent that Plaintiff sues Phelps, Pierce, Brennan and Scarborough because they did not respond to his letters, the claim fails because participation in the after-the-fact review of a grievance is not enough to establish personal involvement for a § 1983 claim. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in underlying deprivation); *see also Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state constitutional claim).

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, or that the grievance process is inadequate. Therefore, the Court will dismiss the grievance claims against Welcome, Dutton, Phelps, and Scarborough as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

B.     **Respondeat Superior**

Plaintiff complains that Phelps and Pierce did not respond to his letters and remove him from "strip cell status." It appears that Plaintiff names Phelps and Pierce as Defendants based upon their supervisory positions.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved . . . ." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal quotation marks and citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (citing *Iqbal*, 556 U.S. at 677; *Rode*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct

and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which supervisors can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at 130.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *See Santiago*, 629 F.3d at 130 n.8; *see also Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal,* personal involvement by a defendant remains the

touchstone for establishing liability for the violation of a plaintiff's constitutional right.[2] *See Williams v. Lackawanna Cnty. Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion but to act in a fashion which actually produced the alleged deprivation; *e.g.,* supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample,* 885 F.2d at 1117-18; *see also Iqbal,* 556 U.S. at 677-87; *City of Canton v. Harris,* 489 U.S. 378 (1989).

Plaintiff provides no facts describing how Phelps and Pierce allegedly violated his constitutional rights, that they expressly directed the deprivation of his constitutional rights, or that they created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. In short, Plaintiff has alleged no facts to support personal involvement by Phelps or Pierce. Accordingly, the Court will dismiss as frivolous all claims against them pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

C. **Injunctive Relief**

In Paragraph 1 of the Prayer for Relief, Plaintiff seeks transfer to the SCI. The Delaware

---

[2]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks,* 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *See Walls v. Taylor*, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution, whether it be inside or outside the state of conviction. *See Olim v. Wakinekona*, 461 U.S. 238, 251 (1983). The injunctive relief Plaintiff seeks is unavailable to him. Therefore, the Court will strike the paragraph 1 of the Prayer for Relief.

### D. Request for Counsel

Plaintiff seeks counsel on the grounds that: (1) he cannot afford to hire an attorney; (2) his imprisonment and housing in SHU greatly limits his ability to litigate; (3) the issues are complex; (4) a lawyer would assist Plaintiff in locating witnesses, presenting evidence, and cross-examining witnesses; (5) he has made repeated, unsuccessful attempts to retain counsel; and (6) counsel would serve the best interests of justice in this case. (D.I. 5)

A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel.[3] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *See Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to

---

[3]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (stating § 1915(d) – now § 1915(e)(1) – does not authorize federal court to require an unwilling attorney to represent an indigent civil litigant, as operative word in statute is "request.").

request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

After reviewing Plaintiff's request, the Court concludes that the case is not so factually or legally complex that requesting an attorney is warranted. To date, the filings in this case demonstrate Plaintiff's ability to articulate his claims and represent himself. In these circumstances, the Court will deny without prejudice to renew Plaintiff's request for counsel. (D.I. 5)

## V. CONCLUSION

For the above reasons, the Court will dismiss all grievance claims and all claims against Phelps, Pierce, Welcome, and Dutton as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), and will strike Paragraph 1 of the Prayer for Relief.

Plaintiff will be allowed to proceed against: (1) Scarborough on the "strip cell status" claim and the denial of religious materials claim; and (2) Brennan on the twenty-four hour restraint claim.

An appropriate Order follows.